1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DERRICK K.,

                 Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

Case No. C21-5034-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing his testimony as well as the medical opinion evidence. (Dkt. # 14 at 1-2.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born in 1981, has a GED, and previously worked as a warehouse worker, pizza restaurant worker, donation station representative at Goodwill, delivery driver, and grocery distribution center order selector. AR at 217, 235. Plaintiff was last gainfully employed in March 2018. *Id.* at 217.

ORDER - 1

1         In April 2019, Plaintiff applied for benefits, alleging disability as of March 15, 2018. AR

2    at 182-89. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff

3    requested a hearing. *Id.* at 107-14, 117-25. After the ALJ conducted a hearing in August 2020

4    (*id*. at 33-75), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 16-27.

5         Utilizing the five-step disability evaluation process,[1] the ALJ found:

6         Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset
     date.

7

8         Step two: Plaintiff has the following severe impairments: diabetes mellitus, depressive
     disorder, and post-traumatic stress disorder.

9         Step three: These impairments do not meet or equal the requirements of a listed
     impairment.[2]

10

11        Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional
     limitations: he can engage in unskilled, repetitive, routine tasks in two-hour increments.
     He can have no contact with the public. He can work in proximity to but not in

12   coordination with co-workers. He can have occasional contact with supervisors. He can
     occasionally stoop, crouch, crawl, kneel, and climb ramps, stairs, ropes, ladders, and

13   scaffolds.

14        Step four: Plaintiff cannot perform past relevant work.

15        Step five: As there are jobs that exist in significant numbers in the national economy that
     Plaintiff can perform, Plaintiff is not disabled.

16

     AR at 16-27.

17

18        As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

19   Commissioner's final decision. AR at 1-7. Plaintiff appealed the final decision of the

20   Commissioner to this Court. (Dkt. # 4.)

21

22

23

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

1

### III.    LEGAL STANDARDS

2      Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3  security benefits when the ALJ's findings are based on legal error or not supported by substantial

4  evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

5  general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

6  ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

7  (cited sources omitted). The Court looks to "the record as a whole to determine whether the error

8  alters the outcome of the case." *Id*.

9      "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

10  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

11  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

12  Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

13  testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

14  1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

15  neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

16  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

17  rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

18

### IV.    DISCUSSION

19  **A.      The ALJ Erred in Assessing Plaintiff's Subjective Allegations**

20      The ALJ summarized Plaintiff's allegations and discounted them because: (1) Plaintiff's

21  mental health treatment was limited to outpatient therapy and he refused group therapy and

22  medications; (2) Plaintiff's allegation of social deficits was contradicted by evidence that

23  Plaintiff could appropriately interact with his medical providers; (3) Plaintiff only inconsistently

ORDER - 3

1    engaged in treatment for his diabetes, and that condition did not cause disabling functional

2    limitations; and (4) Plaintiff's activities were not as limited as he alleged. AR at 21-23. Plaintiff

3    argues that the ALJ erred in failing to provide clear and convincing reasons for discounting his

4    allegations of disabling functional limitations caused by his depression and irritability. *See*

5    *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

6            *1.     Treatment*

7            As to the ALJ's first reason, Plaintiff points to evidence (AR at 525) that a psychiatrist

8    recommended that he discontinue his medications, and Plaintiff referenced this advice during the

9    administrative hearing (*id.* at 67-68). Although there are a couple of hints that others disagreed

10    with that advice (*see, e.g., id.* at 447, 540), the ALJ did not acknowledge that Plaintiff stopped

11    taking psychiatric medication based on his psychiatrist's advice.

12            The record does indicate that Plaintiff refused to participate in group therapy on one

13    occasion (AR at 540), but there is no other evidence that others recommended this setting for

14    him. Plaintiff enrolled in a job training class at one point but left the class due to a conflict with

15    the professor. *See id.* at 677, 681. The record does not support the ALJ's inference that Plaintiff's

16    refusal to participate in group therapy undermines his assertion of social deficits; instead, as

17    Plaintiff argues (dkt. # 14 at 7), it corroborates his allegations of problems interacting with

18    others.

19            For these reasons, the Court finds that the ALJ's finding that Plaintiff's treatment

20    history/compliance undermines his allegations is not supported by substantial evidence.

21            *2.     Plaintiff's Interactions With Providers*

22            Plaintiff also goes on to challenge the ALJ's second reason: that he could interact

23    appropriately with providers despite his purported anger and irritability problems. The ALJ

ORDER - 4

1   acknowledged that on one occasion, Plaintiff became angry at a provider, but that "other records

2   do not contain evidence of significant difficulty interacting with medical providers." AR at 22.

3   On the contrary, the record contains many examples of angry outbursts or interpersonal

4   irritability during Plaintiff's appointments. *See, e.g.*, *id*. at 418, 532, 534, 536, 540, 656, 712. The

5   Court finds that the ALJ's interpretation of the record does not accurately reflect the context of

6   the entire record, and thus amounts to improper cherry-picking.

7                            *3.      Activities*

8          Lastly, Plaintiff challenges the ALJ's reliance on his activities as a reason to discount his

9   allegations, arguing that none of the activities described meaningfully contradicts his allegations

10  related to depression or irritability. Specifically, the ALJ cited Plaintiff's ability to care for his

11  one-year-old daughter on weekdays, shop for food once a week, prepare simple meals, drive, use

12  public transportation, relate with neighbors, fly to North Carolina for a funeral, and manage his

13  finances independently. AR at 23.

14         The only activities among this list that could plausibly pertain to Plaintiff's depression

15  and irritability limitations would be using public transportation, flying to North Carolina for

16  funerals, and relating with neighbors. Plaintiff stated in a function report that he was able to use

17  public transportation; the ALJ asked him about this at the hearing and he reported that pre-

18  pandemic he rode the bus for a half-hour once a week to and from his therapy appointments. *See*

19  AR at 50-51. Plaintiff also explained at the hearing that after his grandmothers died of COVID-

20  19 within a week of each other, he flew to North Carolina to attend their funerals, and the flight

21  required changing planes. *See id*. at 51-54, 743. The ALJ did not explain how Plaintiff's ability

22  to use public transportation or fly across the country contradicted his allegations: those activities

23  may indicate something about his ability to be around strangers, but Plaintiff alleged problems

1  interacting with authority figures and getting aggressive during interactions with co-workers,

2  other drivers on the road, and store clerks. *Id*. at 59-65. Plaintiff did not allege difficulty being in

3  proximity to others. *Id*. Plaintiff's ability to use public transportation or fly on an airplane would

4  not necessarily require any significant interactions, such that his ability to complete these

5  activities would stand in contrast to his allegations.

6        Plaintiff also reported during a shelter inspection that he had no problems with his

7  neighbors or landlord (AR at 690), but the record describes many conflicts with Plaintiff's

8  neighbors. *See, e.g., id*. at 553, 695, 708-09, 712, 746. Thus, the ALJ erroneously cherry-picked

9  from the record in relying only on Plaintiff's report to an inspector while ignoring the other

10  evidence of ongoing conflict.

11        Because the ALJ failed to identify activities that are both supported by the record and

12  directly contradict Plaintiff's allegations of disabling social limitations, the ALJ erred in relying

13  on activities as a reason to discount that testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th

14  Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's

15  testimony or (2) "meet the threshold for transferable work skills").

16        For all of these reasons, the Court finds that the ALJ failed to provide legally sufficient

17  reasons to discount Plaintiff's allegations of disabling social limitations. Although Plaintiff

18  requests that this error be remedied by a remand for a finding of disability, the Court declines to

19  find in the first instance that Plaintiff's social limitations are so extreme as to be disabling. *See*

20  *Leon v. Berryhill*, 880 F.3d 1044, 1045 (9th Cir. 2017) ("An automatic award of benefits in a

21  disability benefits case is a rare and prophylactic exception to the well-established ordinary

22  remand rule."). Further proceedings on this issue would serve the useful purpose of determining

23  whether there are any jobs that Plaintiff could perform despite his limitations, which indicates

ORDER - 6

1    that a remand for a finding of disability would be inappropriate. *See Treichler v. Comm'r of Soc.*

2    *Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Therefore, the Court remands this case for

3    further administrative proceedings.

4        **B.       The ALJ Did Not Harmfully Err in Assessing the Medical Opinion Evidence**

5            Plaintiff challenges the ALJ's assessment of an opinion written by examining

6    psychologist J. Alex Crampton, Psy.D., as well as a third-party function report completed by

7    Plaintiff's therapist, Eric Johnson, MA, LMHCA. The Court will consider each disputed opinion

8    in turn.

9                    *1.       Legal Standards*

10           The regulations effective March 27, 2017, 20 C.F.R. §§ 404.1520c(c), 416.920c(c),

11   require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how

12   the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a)-(b),

13   416.920c(a)-(b). The regulations require an ALJ to specifically account for the legitimate factors

14   of supportability and consistency in addressing the persuasiveness of a medical opinion. Thus,

15   the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's

16   opinions. *See, e.g.*, *Kathleen G. v. Comm'r of Social Sec.*, No. C20-461 RSM, 2020 WL

17   6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly

18   supersede the "specific and legitimate" standard because the "specific and legitimate" standard

19   refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the

20   *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the

21   evidence).

22           Further, the Court must continue to consider whether the ALJ's analysis is supported by

23   substantial evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

1  Fed. Reg. 5852 (January 18, 2017) ("Courts reviewing claims under our current rules have

2  focused more on whether we sufficiently articulated the weight we gave treating source opinions,

3  rather than on whether substantial evidence supports our final decision … [T]hese courts, in

4  reviewing final agency decisions, are reweighing evidence instead of applying the substantial

5  evidence standard of review, which is intended to be highly deferential standard to us.").

6                          *2.      Dr. Crampton*

7          Dr. Crampton examined Plaintiff in September 2018 and completed a DSHS form

8  opinion describing his symptoms and moderate-to-marked limitations. AR at 444-48. The ALJ

9  found the opinion unpersuasive for several reasons. *Id*. at 24-25.

10         First, the ALJ found that Dr. Crampton failed to identify specific workplace limitations.

11  AR at 24. This reason is factually incorrect: Dr. Crampton provided opinions as to Plaintiff's

12  specific functional limitations in a variety of areas. *See id*. at 446.

13         Next, the ALJ found Dr. Crampton's opinion to be contradicted by the "primarily

14  normal" mental status examination findings. AR at 24 (referencing *id*. at 447-48). The mental

15  status examination findings may be inconsistent with some of the cognitive marked limitations

16  indicated by Dr. Crampton, but the marked limitations indicated as to social and adaptive

17  functioning are not necessarily inconsistent with normal objective findings.

18         The ALJ also found Dr. Crampton's opinion to be inconsistent with Plaintiff's activities,

19  such as caring for his one-year-old daughter all day by himself, driving, traveling by plane,

20  shopping, and using public transportation. AR at 25. These activities are reasonably inconsistent

21  with Dr. Crampton's opinion that, for example, Plaintiff was markedly limited in his ability to

22  complete routine tasks or without special supervision or make simple work-related decisions. *See*

23  *id*. at 446.

ORDER - 8

For these reasons, the Court finds that the ALJ provided some valid reasons to discount Dr. Crampton's opinion, particularly to the extent that it described marked cognitive limitations. The Court finds no reversible error in the ALJ's assessment of this opinion, but the ALJ may reconsider it upon remand if necessary in light of the reconsideration of Plaintiff's allegations of social limitations as described *supra*.

3.      Mr. Johnson

Mr. Johnson completed a third-party function report, leaving most sections blank but describing Plaintiff's tendency to interpret social interaction as threatening and to respond with anger. *See* AR at 268-75. The ALJ found Mr. Johnson's report to be unpersuasive because he did not point to specific objective findings, nor did he identify particular workplace limitations. *Id*. at 25. The ALJ also found that Plaintiff's activities were inconsistent with Mr. Johnson's report. *Id*.

For the reasons explained *supra*, the Court finds that Plaintiff's activities are not inconsistent with the social deficits described by Mr. Johnson. But the ALJ provided other valid reasons to discount Mr. Johnson's report, namely his failure to specify any particular workplace limitations. The ALJ reasonably found that Mr. Johnson's reference to an unspecified degree of struggle that Plaintiff experiences when interacting with authority figures does not amount to a probative statement as to Plaintiff's RFC. This is a valid reason to find Mr. Johnson's statement less persuasive. *See, e.g.*, *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("Here, the ALJ found that Dr. Zipperman's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC."). Thus, the Court finds no harmful error in the ALJ's assessment of Mr. Johnson's report.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED, and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider Plaintiff's allegations of social limitations and any other parts of the decision as necessary.

Dated this 13th day of September, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 10